IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SRINIVAS PENUMELLA<br><br>                   **Plaintiff,**<br><br>**v.**<br><br>THOMAS TAM TUONG PHAM<br><br>                   **Defendant.** | **CIVIL ACTION NO. 22-1197** |

MEMORANDUM OPINION

**Rufe, J.**                                                                 **December 28, 2023**

Plaintiff Srinivas Penumella filed suit against Defendant Thomas Tam Tuong Pham for breach of contract. Pham failed to respond to the Complaint or otherwise appear. The Clerk having entered default, Penumella seeks a default judgment against Pham in the amount of the principal due under the parties' agreement along with attorneys' fees and post-judgment interest. For the reasons set forth herein, Plaintiff's motion will be granted.

I.        BACKGROUND

The Complaint and its attachments allege that Plaintiff Penumella is a resident of Massachusetts. Defendant Pham is a former Pennsylvania resident who now lives in New Zealand.[1] The documents of record indicate that Penumella and Pham were once business partners, each with capital interests—Penumella with 60% ownership, and Pham with 40% ownership—in Seascape Consulting, a Massachusetts limited liability company.[2]

On December 21, 2015, when Pham was living in Pennsylvania, he and Penumella executed an agreement in which Pham acknowledged that he "is indebted to Seascape and

---

[1] *See* Firman Aff. Service [Doc. No. 3] (sworn affidavit attesting to personal service of papers upon Pham at his address in Auckland, New Zealand).

[2] Compl., Ex. A at 1 [Doc. No. 1-1].

Penumella in the amount of $134,900 . . . which debt arises from certain excess unauthorized withdrawal of funds from Seascape[.]"[3] Attached to the agreement is a promissory note, also executed by the parties on December 21, 2015, in which Pham agreed to pay back the $134,900, plus 9% interest, in two installments: (1) $65,000 by March 31, 2016; and (2) the remainder, plus accrued interest, by October 15, 2016.[4] The parties further agreed that Pham's minority ownership stake in Seascape would be transferred to Penumella, but Pham could recoup up to half of his original stake by fulfilling his payment obligations.[5]

The agreement incorporated and restated the repayment terms outlined in the attached promissory note, but the agreement added that Penumella had "sole discretion" to charge 9% interest on the outstanding balance "by providing written notice to Pham."[6] The agreement required that all notices be in writing, and that "notice may be delivered to a party (a) at the address listed [in the agreement] or to a new address that a party designates in writing by certified mail or by overnight courier; (b) in person or (c) by electronic mail."[7]

In the event of default, the agreement granted Penumella the right to recover from Pham "all amounts due under this Agreement" as well as "all costs of collection and reasonable attorneys' fees and court costs paid or incurred by Penumella in enforcing the terms of this Agreement or the Promissory Note, to the extent permitted by law[.]"[8] The agreement and

---

[3] *Id.*; *see also id.* at 1, 7 (listing Pham's former address in King of Prussia).

[4] *Id.* at 7.

[5] *Id.* at 2.

[6] *Id.* at 1–2.

[7] *Id.* at 5.

[8] *Id.* at 4.

promissory note both included choice-of-law provisions stating that they would be governed by Massachusetts law.[9] Penumella alleges that Pham never paid any of the $134,900 balance.[10]

On March 29, 2022, Penumella filed this action against Pham for breach of contract. On October 21, 2022, a process server personally delivered the Complaint and Civil Designation form to Pham at his address in Auckland, New Zealand, as confirmed by affidavit and supporting documentation.[11] To date, Pham has not filed an answer to the Complaint or entered an appearance. The Court now addresses Penumella's motion for default judgment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." "Following the entry of default, the clerk may enter a default judgment if the plaintiff's claim is for a sum certain, but otherwise the plaintiff must apply to the court for judgment."[12]

Rule 55(b)(2) authorizes a court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading.[13] When considering a motion for default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[14]

---

[9] *Id.* at 4, 8.

[10] Compl. at 2 [Doc. No. 1].

[11] Firman Aff. Service [Doc. No. 3].

[12] *Axalta Coating Sys., LLC v. SRS Ventures, Inc.*, No. 21-3800, 2022 WL 874951, at *2 (E.D. Pa. Mar. 24, 2022) (citing Fed. R. Civ. P. 55(b).

[13] *See Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990); Fed. R. Civ. P. 55(b)(2).

[14] *DIRECTV, Inc. v. Albright*, No. 03-4603, 2003 WL 22956416, at *1 (E.D. Pa. Dec. 9, 2003) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

To grant default judgment, a court first "must ascertain whether the unchallenged facts constitute a legitimate cause of action . . . ."[15] If the complaint pleads a legitimate cause of action, the Court of Appeals for the Third Circuit requires that district courts consider the following factors: (1) the potential for prejudice to the plaintiff if default judgment is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether the defendant's failure to respond is due to culpable conduct.[16]

III.   DISCUSSION

A. Default Judgment

1. *Service of Process*

As a threshold matter, the Court finds that Penumella properly served the Complaint on Pham. Penumella has submitted a sworn affidavit from a process server in Auckland, New Zealand, attesting to the personal delivery of the Complaint to Pham and attaching a photograph of Pham holding the delivered papers.[17] Federal Rule of Civil Procedure 4(f) governs service upon an individual in a foreign country. Penumella has served Pham in accordance with Rule 4(f)(2)(A), which authorizes service "as prescribed by the foreign country's law for service

---

[15] *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015) (citations omitted); *see also* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2688.1 (4th ed.) ("[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").

[16] *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

[17] Firman Aff. Service [Doc. No. 3].

in that country in an action in its courts of general jurisdiction[.]"[18] There is no question in this

case that effective service was made and that Pham has had actual notice of this lawsuit.[19]

### 2. *Inference of Liability*

Once service is established, the Court must then determine whether the Complaint alleges

facts that allow the Court to draw the reasonable inference that Pham is liable for breach of

contract.[20] Penumella asserts breach of contract regarding Pham's alleged failure to pay a debt

according to the terms of an agreement and promissory note relating to Pham's previous

ownership interests in, and debts owed to, Seascape Consulting LLC, a Massachusetts limited

liability company. Penumella, Pham's business partner and the majority interest holder in

Seascape, is a Massachusetts resident, and both documents state that they are to be governed by

Massachusetts law.[21] As the elements for breach of contract are essentially the same in

---

[18] Rule 4(f)(2) applies "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice[.]"

New Zealand is not a party to the Hague Convention. *See Osio v. Moros*, No. 21-20706, 2022 WL 17583631, at *4 (S.D. Fla. Sept. 26, 2022). However, the website for the District Courts of New Zealand indicates that "[d]ocuments that begin a proceeding . . . must be served by Personal Service," meaning "the documents must be personally handed to the other person by the person who is serving them[.]" New Zealand Ministry of Just., *Going to Court*, https://www.justice.govt.nz/courts/going-to-court/without-a-lawyer/representing-yourself-civil-district-court/serving-documents [https://perma.cc/9FK2-V75J] (last accessed Dec. 22, 2023); *see also In re The Richmond Grp., Inc.*, No. 16-20258, 2017 WL 4221099, at *5 (Bankr. W.D.N.Y. Sept. 21, 2017) (citing District Courts of New Zealand website).

Similarly, the website for the U.S. Department of State provides that "[s]ervice of process can be accomplished in New Zealand . . . via personal service by a process server or attorney in New Zealand[.]" U.S. Dep't of State, *Judicial Assistance Country Information: New Zealand*, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/NewZealand0 html [https://perma.cc/WKY9-SY7S] (last accessed Dec. 22, 2023).

[19] *See Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) ("Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." (citation and quotation marks omitted)).

[20] *Segreti v. Borough of Wilkinsburg*, 436 F. App'x 114, 116 n.1 (3d Cir. 2011). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.")

[21] *See* Compl. at 1 [Doc. No. 1]; Compl., Ex. A at 5, 8 [Doc. No. 1-1].

Pennsylvania and Massachusetts, there is no apparent conflict of laws. The Court therefore will

give effect to the parties' choice of Massachusetts law in evaluating whether Penumella has

shown a basis for imposing liability on Pham.

Under Massachusetts law, "[t]o prevail on a claim for breach of contract, a plaintiff must

demonstrate that there was an agreement between the parties; the agreement was supported by

consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract;

the defendant committed a breach of the contract; and the plaintiff suffered harm as a result."[22]

In Massachusetts, "[p]romissory notes are contracts and are analyzed as such."[23] Where a

promissory note underlies a separate but related agreement containing additional terms, the note

and agreement are considered separate entities under Massachusetts law, but the enforceability of

the agreement depends on the enforceability of the underlying debt.[24]

Penumella alleges that he and Pham executed the agreement and promissory note, both of

which required Pham to repay, at a minimum, a principal sum of $134,900.00. Pham conceded in

the text of the agreement that he "is indebted to Seascape and Penumella" and that he "wishes to

pay the Debt."[25] Penumella stated in the agreement that he "wishes to accept payment of the

Debt[.]"[26] The promissory note contains Pham's promise to pay and was "issued in connection

---

[22] *Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016) (citing *Singarella v. Boston*, 173 N.E.2d 290, 291 (Mass. 1961)). Similarly, under Pennsylvania law, "the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages," *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) (quotation marks omitted) (quoting *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005)), and "[f]ailure of consideration goes to the heart of any claim based on an agreement and is always available as a defense to that claim." *Obara Realty Grp. v. Atlas Real Est. Invs., LLC*, 279 A.3d 614, 617 (Pa. Super. Ct. 2022) (quotation marks and citation omitted).

[23] *JPMorgan Chase & Co., Inc. v. Casarano*, 963 N.E.2d 108, 111 (Mass. App. Ct. 2012).

[24] *See Deutsche Bank Nat'l Tr. Co. v. Fitchburg Capital, LLC*, 28 N.E.3d 416 (Mass. 2015) (applying common-law principles in the context of a mortgage agreement and an underlying promissory note).

[25] Compl., Ex. A at 1 [Doc. No. 1-1].

[26] *Id.*

with the agreement."[27] The agreement states that, "[s]imultaneous with the execution and delivery of [the] Agreement by the parties," Pham transferred to Penumella "all of his Ownership Interests" in Seascape, and he could recoup "fifty percent (50%) of the Transferred Interests" only upon timely satisfaction of "all payment obligations[.]"[28] Therefore, the agreement was a conveyance of Pham's ownership interest in Seascape to secure his $134,900 debt obligation to Penumella. There are no indications that the debt was discharged, or that the promissory note otherwise cannot be enforced. These terms are sufficient for the Court to infer that the agreement and promissory note were supported by adequate consideration.[29]

As to the breach, Penumella alleges that Pham never paid any of the owed amount.[30] There is nothing in the record suggesting that Penumella was unwilling or unable to abide by its obligations under the agreement had Pham made his payments on time. Accepting as true Penumella's allegation that Pham never paid, the Court has a sufficient basis to infer that Pham's non-payment was a material breach. The Court can also reasonably infer that Penumella suffered harm as a result of Pham's breach—Penumella is now short at least $134,900, not accounting for the additional damages Penumella seeks on top of the principal balance (as further discussed below). In sum, the Court is satisfied that Penumella's allegations support a reasonable inference that Pham is liable for breach of contract under Massachusetts law.

---

[27] *Id.* at 7.

[28] *Id.* at 2.

[29] *See A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth.*, 95 N.E.3d 547, 560 (Mass. 2018) (holding that it is sufficient if the contract bound a party to provide "certain valuable consideration," such as written notice before a contract can be cancelled).

[30] Compl. at 2 [Doc. No. 1].

### 3.   *Application of* Chamberlain *Factors*

The Court next considers each of the three *Chamberlain* factors. Under the first factor, Penumella undoubtedly will be prejudiced if default judgment is denied, because Pham has failed to answer or otherwise defend this matter. Therefore, "denying the request for default judgment will prejudice Plaintiff because [he] has no other means of vindicating [his] claims."[31] The prejudice to Penumella is particularly acute where, as here, a significant sum is owed under the plain terms of a genuine agreement.[32]

Upon careful consideration, the second factor—whether the defendant appears to have a litigable defense—weighs only slightly in favor of granting a default judgment. Even upon the face of the Complaint and its incorporated documents, Pham appears to have a litigable statute of limitations defense. This Court, sitting in diversity, must apply the choice-of-law rules of Pennsylvania.[33] Although "Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum,"[34] and the Court therefore applied Massachusetts law with respect to the applicable substantive law, Pennsylvania courts have held that choice-of-law provisions "do not apply to questions of applicability of the chosen state's statute of limitations unless they expressly so provide."[35]

---

[31] *Commodity Futures Trading Comm'n v. Salerno*, No. 18-1585, 2020 WL 7122418, at *2 (E.D. Pa. Sept. 23, 2020) (quotation marks and citations omitted).

[32] *See Axalta*, 2022 WL 874951 at *3 (finding prejudice to plaintiff if default was denied in breach of contract case, "as Plaintiff is owed over $100,000 under the terms of the contract").

[33] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[34] *Gay v. CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007) (quotation marks omitted) (quoting *Churchill Corp. v. Third Century, Inc.*, 396 Pa. Super. 314, 324 (Pa. Super. Ct. 1990)).

[35] *Unisys Fin. Corp. v. U.S. Vision, Inc.*, 630 A.2d 55, 58 (Pa. Super. Ct. 1993) (citing *Gluck v. Unisys Corp.*, 960 F.2d 1168 (3d Cir. 1992)).

The choice-of-law provisions here do not expressly indicate that the parties intended for the Massachusetts statute of limitations to apply. The Complaint does not allege the date on which the breach occurred, but the terms of the agreement and promissory note provide a final payment deadline of October 15, 2016. Penumella filed this action on March 29, 2022. Assuming, without deciding, that Penumella's cause of action became ripe immediately following the expiration of the final payment deadline, Penumella's claim would be timely under the Massachusetts six-year statute of limitations for breach of contract actions, but not under the Pennsylvania four-year statute of limitations.[36] That said, Pham has "not asserted any defense in this action, whether by responding to the Complaint or by responding to this Motion . . . or by otherwise contesting the allegations."[37] Given Pham's failure to make an appearance in this case, let alone assert the potential affirmative defenses available to him, the Court will not find that this second factor weighs against entering a default judgment.[38]

---

[36] *Compare* Mass. Gen. Laws ch. 260, § 2, *with* 13 Pa. Cons. Stat. § 2725. To be clear, the Court does not decide the question of which statute of limitations applies, although decisions from Pennsylvania state courts and federal district courts in this Circuit suggest that Pennsylvania's shorter limitations period may control. *See Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. Ct. 2005) ("The long-standing rule of Pennsylvania is that the law of the forum determines the time within which a cause of action shall be commenced." (quoting *Unisys*, 630 A.2d at 58)); *see generally Everwine v. Nemours Found.*, No. 05-3004, 2006 WL 891060, at *2 (E.D. Pa. Apr. 4, 2006); *Pasternak v. Engle, P.C.*, No. 06-2286, 2007 WL 9812747, at *1 (E.D. Pa. Jan. 26, 2007). As a further consideration, there is an open question as to whether the Pennsylvania borrowing statute governs. Although the Court does not decide the issue, the borrowing statute provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. Cons. Stat. § 5521(b).

[37] *Salerno*, 2020 WL 7122418 at *3 (quotation marks and citation omitted). A statute of limitations argument is an affirmative defense which, like other affirmative defenses, can be waived if not timely raised. The Third Circuit has held that affirmative defenses, "if not pleaded in the answer, . . . must be raised at the earliest practicable moment thereafter." *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002). Indeed, the Third Circuit has "even found a limitations defense to be waived where it was pleaded in the answer, but where it was not pursued before trial." *Id.* at 136 (citing *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153 (3d Cir. 1989)).

[38] *Cf. Chamberlain*, 210 F.3d at 164 (finding that the second factor weighed against a default judgment because the defendant had in fact "alleged a litigable defense to both counts of the complaint").

The third and final *Chamberlain* factor—whether the defendant's failure to respond is due to culpable conduct—weighs heavily in favor of default judgment. Pham caused the default because he has failed "to engage in the litigation process and to offer [any] reason for this failure,"[39] which can be considered culpable conduct. The Court is unable to "find [any] excuse or justification for default, apart from Defendant's own culpability."[40] Upon careful consideration of each of the three factors, the Court will enter default judgment against Pham pursuant to Federal Rule of Civil Procedure 55(b) in the amounts set forth below.

### B.  Relief Sought

Penumella seeks multiple categories of damages. First, Penumella seeks to recover the principal debt amount of $134,900.00.[41] Next, Penumella seeks attorneys' fees in the amount of $14,479.21.[42] Finally, Penumella seeks post-judgment interest "accruing at the legal rate, until paid in full."[43]

While Penumella cites Rule 55(b)(2) as the basis for his motion—which does not expressly require submission of an affidavit showing the amount due, unlike default judgments for a sum certain under Rule 55(b)(1)—"[i]t seems evident that Rule 55(b)(2) contemplates sworn proof," given that "[i]t would be strange indeed for an uncertain sum to require less."[44] Accordingly, courts in the Third Circuit have applied the principle that "[u]nlike liability, damages 'cannot be awarded simply on the basis of the pleadings, but must instead be

---

[39] *Salerno*, 2020 WL 7122418 at *3 (quotation marks and modifications omitted).

[40] *Einhorn v. Klayman Produce Co., Inc.*, No. 13-1720, 2013 WL 6632521, at *4 (E.D. Pa. Dec. 17, 2013).

[41] Pl.'s Mem. Supp. Second Mot. Default J. at 1 [Doc. No. 8-1].

[42] *Id.*

[43] *Id.*

[44] *Hodgson Mill Corp. v. Hodgson Mill, Inc.*, No. 20-1073, 2023 WL 2372939, at *1 n.2 (D. Del. Mar. 6, 2023).

established at an evidentiary hearing held pursuant to [Rule] 55(b)(2),' unless damages are

'liquidated or computable' or the plaintiff otherwise submits such proof without a hearing."[45]

### 1. *Principal*

The principal balance Penumella seeks is a sum certain. The $134,900 amount is

described expressly in the plain language of the agreement and promissory note. Accordingly, no

further proof is needed, and the Court awards $134,900 in liquidated damages for the principal

amount owed pursuant to the parties' agreed-upon terms.

### 2. *Attorneys' Fees*

In the event of default, the agreement grants Penumella the right to recover "all costs of

collection and reasonable attorneys' fees and court costs paid or incurred by Penumella in

enforcing the terms of this Agreement or the Promissory Note, to the extent permitted by

law[.]"[46] Penumella requests a total attorneys' fee award of $14,479.21. Penumella is entitled to

recover attorneys' fees under the plain terms of the agreement. However, it is his burden to

establish that the fees he seeks are reasonable.[47]

To determine a reasonable award of attorneys' fees, the Court applies Massachusetts law,

pursuant to the choice-of-law provisions.[48] "Massachusetts generally follows the 'American

---

[45] *Malibu Media, LLC v. Brickhouse*, No. 18-3139, 2019 WL 4061754, at *2 (E.D. Pa. Aug. 27, 2019) (quoting *Comdyne I, Inc.*, 908 F.2d at 1152).

[46] Compl., Ex. A at 4 [Doc. No. 1-1]. Similarly, the promissory note states that "[u]pon any failure by [Pham] to comply with his payment or other material obligations . . . all costs, fees (including reasonable attorneys' fees) and expenses incurred in connection with [Penumella's] attempts [to] collect any such amounts, shall be immediately due and payable, without further notice or demand by [Penumella]." *Id.* at 7.

[47] *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *see also Twin Fires Inv., LLC v. Morgan Stanley*, 837 N.E.2d 1121, 1137 (Mass. 2005) (holding that claimants have an "obligation to submit sufficient documentation to enable the judge to evaluate the hours spent on particular aspects of the case or the precise nature of the work").

[48] *See Accurate Builders LLC v. Rise Concrete LLC*, No. 22-04911, 2023 WL 2645054, at *4 (D.N.J. Mar. 27, 2023) (applying New Jersey law in calculating attorneys' fees pursuant to default judgment in diversity breach of contract action); *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73 (5th Cir. 1987) ("The award of attorney's fees is part of

Rule' and denies recovery of attorney's fees absent a contract or statute to the contrary."[49]

"Where, however, a contract provides for recovery of attorneys' fees, . . . Massachusetts law

permits two different approaches: the lodestar and multi-factor analysis."[50] A lodestar calculation

involves "multiplying the number of hours reasonably spent on the case times a reasonable

hourly rate,"[51] and "the court may then adjust . . . upward or downward."[52] Under a multi-factor

analysis, courts consider several factors, as defined by the Supreme Judicial Court of

Massachusetts:

> the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by [the] controversy, and the results secured.[53]

Because there is no express dictate under Massachusetts law that one method be applied

over the other in breach of contract actions, the Court has discretion to choose which method to

apply.[54] The Court will apply the lodestar method because the attorneys' hourly rates and total

hours worked have been made readily available for the Court's review, and it finds that method

---

the substantive right of a suit. Thus, the award of attorney's fees in a diversity case depends on the law of the state whose rules govern the substantive claims." (citing *Missouri State Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Prudential Ins. Co. v. Carlson*, 126 F.2d 607, 611 (10th Cir. 1942)).

[49] *Police Comm'r v. Gows*, 705 N.E.2d 1126, 1128 (Mass. 1999) (citation omitted).

[50] *BRT Mgmt. LLC v. Malden Storage, LLC*, No. 17-10005, 2022 WL 20766369, at *2 (D. Mass. Jan. 19, 2022) (citing *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 21 (1st Cir. 2012)).

[51] *Fontaine v. Ebtec Corp.*, 613 N.E.2d 881, 890 (Mass. 1993).

[52] *BRT Mgmt. LLC*, 2022 WL 20766369 at *2.

[53] *Id.* at *3 (quoting *Cummings v. Nat'l Shawmut Bank of Bos.*, 188 N.E. 489, 492 (Mass. 1934)) (quotation marks omitted) (modification in original).

[54] *See BRT Mgmt. LLC*, 2022 WL 20766369 at *3.

to be appropriate for a dispute of this nature. However, the Court will also take the *Cummings* factors under consideration in assessing the overall reasonableness of the award.[55]

Plaintiff Penumella was represented by attorneys Jeffrey S. Davis of Hartmann Doherty Rosa Berman & Bulbulia LLC ("HDRBB") and Jeffrey S. Cianciulli of Weir Greenblatt Pierce LLP ("Weir").[56] Davis and Cianciulli each submitted affidavits attesting to the reasonableness and necessity of the legal services rendered.[57] Attached to those affidavits are itemized billing records, which show that the legal team also included HDRBB attorneys Paul S. Doherty, III, Jeremy B. Stein, and Jennifer A. Cacchioli.[58] The total requested fee award is $14,479.21, including costs such as the filing fee to initiate this action, payments for the process server in New Zealand, and expenses for the preparation of affidavits.[59] Of that total, HDRBB requests $9,090.75, and Weir requests $5,388.46.[60] The submitted evidence is sufficient for the Court to assess the reasonableness of counsel's billable rates and the hours spent working on the case.

Penumella retained HDRBB in December 2019 and the billing records reflect legal services performed through June 15, 2023, over a period of approximately three years and six months.[61] During that time, the Court calculates that HDRBB billed a total of 30.2 hours. Davis billed 8.6 hours, Stein billed 10.1 hours, Doherty billed 0.5 hours, and Cacchioli billed 11 hours.

---

[55] *See Killeen v. Westban Hotel Venture, L.P.*, 872 N.E.2d 731, 738 (Mass. App. Ct. 2007) ("Those factors have been used for years as guides to assessment of reasonable fees in Massachusetts cases, . . . and continue to be useful guides to determining time reasonably spent when applying the lodestar methodology." (citing *Cummings*, 188 N.E. at 492)).

[56] Davis Aff. [Doc. No. 8-2]; Cianciulli Aff. [Doc. No. 8-3].

[57] *Id.*

[58] Davis Aff., Ex. A at 4–21 [Doc. No. 8-2]; Cianciulli Aff., Ex. A [Doc. No. 8-3].

[59] *See, e.g.*, Davis Aff., Ex. A at 20 [Doc. No. 8-2] ("Preparation of Affidavit"); Cianciulli Aff., Ex. A at 5 [Doc. No. 8-3] (filing fee).

[60] Pl.'s Mem. Supp. Second Mot. Default J. at 4 [Doc. No. 8-1].

[61] Davis Aff. [Doc. No. 8-2].

Although this case has not proceeded past the pleadings stage, the Court recognizes that an appropriate amount of time was required for Penumella's counsel to effectuate service of process in New Zealand, to conduct legal research, and to draft the necessary filings to initiate the case and move for default judgment. The modest number of hours billed by HDRBB over three years is reasonable in the context of this case—particularly given that over a third of the time was billed by Cacchioli, an associate, and further considering that 1.7 hours of Davis's time and 4.4 hours of Cacchioli's time were written off from the invoices.[62]

For similar reasons, the 11.1 hours billed by Cianciulli at Weir from March 2022 to July 31, 2023 (approximately one year and five months) are also reasonable in the context of this case.[63] Cianciulli served as local counsel and his time was necessary to draft, review, and facilitate the filings made to this Court, including pro hac vice motions for the HDRBB attorneys. Having found the number of hours billed to be reasonable, the Court proceeds to an analysis of the hourly rates.

At HDRBB, Doherty, Managing Partner at the firm, charged an hourly rate of $550; Stein, a litigation partner, charged $450; Davis, a corporate partner, charged $400; and Cacchioli, a litigation associate, charged $275.[64] At Weir, Cianciulli charged $435.[65] These rates are generally reasonable, as they take into account the lawyers' experience, abilities, and reputation, and are commensurate with rates charged by similarly situated lawyers in the community.[66]

---

[62] *See, e.g.*, Davis Aff., Ex. A at 21 [Doc. No. 8-2] (marking "No Charge" for three of Cacchioli's entries, totaling 1.0 hour).

[63] *See* Cianciulli Aff. [Doc. No. 8-3].

[64] *See generally* Davis Aff., Ex. A [Doc. No. 8-2].

[65] *See generally* Cianciulli Aff., Ex. A [Doc. No. 8-3].

[66] *See Cummings*, 188 N.E. at 492; *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987). The Third Circuit has approved the fee schedule established by Community Legal Services, Inc. ("CLS").

Multiplying the number of hours worked by the hourly rates above results in total attorneys' fees of $11,285.00 for HDRBB and $4,828.50 for Weir. Adding costs and other expenses,[67] those figures increase to $11,739.25 for HDRBB and $5,388.46 for Weir. However, as previously discussed, HDRBB regularly declined to charge the client for certain of its billed time ($1,890 written off), and it periodically applied further "Courtesy Discounts" ($1,000 written off). Taking those facts into consideration, the $9,090.75 amount that HDRBB requests for over three years of work appears eminently reasonable to the Court. The $5,388.46 that Weir requests is consistent with the Court's calculations and is also reasonable. All told, the total amount of requested attorneys' fees constitutes just over 10% of the principal balance owed under the agreement. The Court does not find it necessary to apply a downward modification.

In summary, the Court will award $14,479.21, the full requested sum of attorneys' fees and costs, upon its finding that the attorneys' hourly rates, their number of hours worked, and their associated costs are reasonable in the context of this case.

---

*Maldonado v. Houstoun*, 256 F.3d 181, 187–88 (3d Cir. 2001). The hourly rates for each of the attorneys who worked on this matter fall within or below the CLS ranges for their respective years of experience. Community Legal Services of Philadelphia, *Attorney Fees*, https://clsphila.org/about-community-legal-services/attorney-fees [https://perma.cc/2TN9-J5RX] (last accessed Dec. 27, 2023).

[67] "Cost awards are typically governed by federal statute. . . . Here, however, the contracts themselves provide for recovery of costs." *BRT Mgmt. LLC*, 2022 WL 20766369 at *6 (citing 28 U.S.C. § 1920). Accordingly, the Court will honor the parties' bargain and award costs, which the Court finds to be reasonable. *See id.* at *7.

3. *Post-Judgment Interest*[68]

Penumella requests post-judgment interest at "the legal rate," to accrue beginning from

the date of the judgment until the principal balance and attorneys' fees are paid in full.[69] Section

1961(a) of Title 28 of the United States Code states:

> Interest shall be allowed on any money judgment in a civil case recovered in a
> district court. . . . Such interest shall be calculated from the date of the entry of the
> judgment, at a rate equal to the weekly average 1-year constant maturity Treasury
> yield, as published by the Board of Governors of the Federal Reserve System, for
> the calendar week preceding[] the date of the judgment.[70]

Subsection (b) states that "[i]nterest shall be computed daily to the date of payment . . . and shall

be compounded annually."[71] As construed by the Third Circuit, post-judgment interest awarded

under section 1961(a) "runs from the date that the District Court actually quantifies the award."[72]

The Court has done so here. Accordingly, the Court will award post-judgment interest,

commencing on the date of entry of the judgment accompanying this Memorandum Opinion, and

applying the legal rate based on the weekly average 1-year constant maturity Treasury yield for

the calendar week preceding the date of the judgment.[73]

---

[68] An earlier motion for default judgment sought pre-judgment interest and was denied because no written notice had been provided of the start date, as required by the agreement. Order, May 15, 2023 [Doc. No. 7]. Penumella apparently no longer seeks pre-judgment interest.

[69] *See* Pl.'s Mem. Supp. Second Mot. Default J. at 4 [Doc. No. 8-1].

[70] 28 U.S.C. § 1961(a).

[71] *Id.* § 1961(b).

[72] *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 527–28 (3d Cir. 2001); *see also Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 174–75 (3d Cir. 2010) (declining to limit *Eaves* to the attorneys' fees context).

[73] The Court awards post-judgment interest on the total award, including attorneys' fees and costs as well as the principal amount owed. *Id.*; *see also Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364–65 (D. Del. 2018) (awarding post-judgment interest on $70 million damages award and on prejudgment interest, commencing on the respective dates on which those amounts were quantified).

IV.    **CONCLUSION**

Plaintiff Srinivas Penumella has properly served Defendant Thomas Tam Tuong Pham

with the Complaint, and Pham has had ample opportunity to appear. Pham has not appeared

before this Court or responded to the Complaint in any manner. The Complaint states a claim

against Pham, and the *Chamberlain* factors weigh in favor of granting default judgment. For the

foregoing reasons, Penumella's Motion for Default Judgment will be granted, and Penumella

will be awarded $134,900 in damages and $14,479.21 in reasonable attorneys' fees and costs, for

a total of $149,379.21. Post-judgment interest shall accrue in accordance with the legal rate

under 28 U.S.C. § 1961(a), commencing on the date of entry of the judgment accompanying this

Memorandum Opinion. An order will be entered.